# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

DEBRA GALVIN,

    *Plaintiff*,

vs.

SEARS HOLDING CORPORATION;
SEARS ROEBUCK AND COMPANY; K-
MART CORPORATION; SIERRA
MANAGEMENT CORPORATION;
SIERRA FINANCIAL and
INDEPENDENCE ASSOCIATES, L.P.

    *Defendants.*

Case No. 09-2051-EFM

## MEMORANDUM AND ORDER

Plaintiff Debra Galvin brings suit under 28 U.S.C. § 1332. Galvin alleges that Defendant Sears Roebuck and Company's negligent failure to treat winter conditions on the entryway sidewalk caused injury to her wrist when she fell on black ice on February 13, 2007. Before the Court is Defendant Sears Roebuck and Company's Motion for Summary Judgment (Doc. 77). For the following reasons, the Court denies Defendant's motion.

### I. Factual and Procedural Background[1]

Defendant Sears Roebuck and Company ("Sears") owns, operates, and maintains a department store known as Sears Grand Store ("Sears Grand") located at 8703 Shawnee Mission

---

[1] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

Parkway, Mission, Kansas.[2] Plaintiff Debra Galvin alleges that on February 13, 2007, she was walking on the exterior premises of the Sears Grand and fell when she stepped on untreated or inadequately treated ice.

A large winter storm moved into the Kansas City Metro area on February 11, 2007 and persisted through February 12, and possibly into February 13. Galvin drove to the Sears Grand on February 13, 2007. Her day planner indicated a "snow day" with all of her appointments listed as cancelled. At that time, the side streets were snowy and the main roads were relatively clear, although "mushy." Galvin had enabled the "snow button" feature on her four wheel drive Toyota Highlander to gain additional traction. It was very cold when she arrived at the Sears Grand at approximately 7 p.m.

There was snow and ice residue on the ground when Galvin entered the store, and she most likely had snow and ice accumulation on her boots. Galvin, however, did not see any snow or ice accumulation on the sidewalk near the entryway of Sears Grand. She fell when exiting the store on the exterior sidewalk area just underneath the overhang of the entryway of the Sears Grand. Galvin had been walking slowly because it seemed icy and fell on "black ice." She landed on her right side and fractured her right wrist.

At or near the time of her alleged fall, Galvin viewed a previously opened 20 pound bag of ice melt sitting near a pillar near the entryway. Galvin claims that after she fell, she was told by an unidentified employee of Sears that he had sprinkled the ice melt as best as he could.

Rick Rycraft of All State Striping was hired to clear snow in the parking lot of the Sears Grand. Rycraft would go to the store to push snow and spread rock salt in the parking lots when

---

[2]The other named Defendants are no longer parties in this case (Doc. 80).

snowfall reached a certain level of accumulation. Rycraft performed snow removal services in the parking lot of Sears Grand on February 13, 2007. His invoice showed removal of 4 inches of snow. Rycraft's invoices are based on reports of snowfall from the National Weather Service, Rycraft's physical measurements of accumulation, or radio reports of accumulation. While Rycraft believes his own invoice of 4 inches to be accurate, he charged for removal of 2 inches of accumulation because Sears had been a longtime customer. Rycraft does not know what time of day he performed snow removal services for Sears Grand.

Rycraft was not responsible for and understood he was not to touch the entrance to the Sears Grand. Sears Grand and its employees were solely responsible for inspection of sidewalks and entryways, including the removal of snow and ice, and application of de-icing agents. Based upon store policy and routine, ice melt was applied to the sidewalk and entryway underneath the overhang which partly covers the exterior of Sears Grand.

Phillip Rabbito was the general manager of Sears Grand on February 13, 2007. Galvin did not report her injuries to Sears Grand until March 16, 2007. As a result of Galvin's belated report of her fall, Rabbito had a recollection of poor weather on February 13, 2007, but he was unable to recall the exact weather pattern.

Galvin filed her lawsuit, alleging negligence on January 30, 2009. Sears now requests summary judgment in its favor.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[3] "An issue

---

[3] Fed. R. Civ. P. 56(a).

of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[4] A fact is "material" when "it is essential to the proper disposition of the claim."[5] The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[6]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[7] In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[8]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[9] The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10] "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[11] Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[12] The nonmovant's "evidence, including testimony, must be based on more

---

[4]*Haynes v. Level 3 Communications*, LLC, 456 F.3d 1215, 1219 (10th Cir. 2006).

[5]*Id.*

[6]*LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[7]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[8]*Id.* (citing *Celotex*, 477 U.S. at 325.)

[9]*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[10]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[11]*Adler*, 144 F.3d at 671.

[12]*White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

than mere speculation, conjecture, or surmise."[13]

Finally, summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[14]

### III. Analysis

Plaintiff contends that Defendant knew or should have known of an unsafe and dangerous condition, but failed to take reasonable steps to prevent injury to the Plaintiff, including but not limited to its failure to inspect, warn, and/or remedy the conditions and were thereby negligent.

To demonstrate negligence, a plaintiff must show that a defendant owed a duty to the plaintiff, that defendant breached the duty, and the breach of duty proximately caused injury to the plaintiff.[15] "A proprietor must use ordinary care to keep those portions of the premises which can be expected to be used by business invitees in a reasonably safe condition."[16] However, "the proprietor of a trade or business is not the absolute insurer of the safety of customers."[17]

Kansas's "winter storm" doctrine establishes a proprietor's duty of ordinary care regarding removal of accumulated ice, snow and other precipitation from outside areas during a winter storm. "[A] business proprietor does not breach the duty of ordinary care owed to invitees to keep premises in a reasonably safe condition by not removing accumulated precipitation from exterior surfaces during a winter storm and a reasonable time thereafter, absent unusual circumstances."[18]

---

[13]*Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[14]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[15]*See, e.g.*, *Hayes v. Kit Mfg. Co.*, 1997 WL 756624, at *2 (D. Kan. 1997) (citing *P.W. v. Kansas Dep't Of Soc. & Rehab. Serv.*, 255 Kan. 827, 831, 877 P.2d 430, 434 (1994)).

[16]*Knowles v. Klase*, 204 Kan. 156, 157, 460 P.2d 444, 445–46 (1969).

[17]*Steinmeyer v. McPherson*, 171 Kan. 275, 278, 232 P.2d 236, 239 (1951).

[18]*Agnew v. Dillons, Inc.*, 16 Kan. App. 2d 298, 304, 822 P.2d 1049, 1054 (1991).

Here, Defendant contends that it is entitled to summary judgment because the uncontroverted facts demonstrate that there was a continuing winter storm at the time of Plaintiff's fall. The evidence of an ongoing winter storm, however, is controverted. Defendant relies on the National Weather Service Weather Forecast Office for Kansas City / Pleasant Hill, Mo., which reported snowfall accumulations of 3 to 5 inches on the evening of February 12, 2007.[19] Plaintiff, however, fell on the evening of February 13. Furthermore, most of the National Weather Service afternoon local report summaries on February 13, recorded five to six hours before Galvin's fall, indicate snowfall totals, but they do not indicate whether snowfall was ongoing.

In addition, although Plaintiff had marked "snow day" in her day planner, she testified that she did not believe that it had snowed that day. Even though Rick Rycraft removed 4 inches of snow from the parking lot of Sears Grand on February 13, 2007, he could not recall what time of day he performed the snow removal. Furthermore, Phillip Rabbito, the general manager at Sears Grand was unable to recall the exact weather conditions that day, or whether it had stopped snowing three, ten, or twelve hours prior to Galvin's fall.[20] Jamie Whitt, another manager at Sears Grand, did not know when it stopped snowing on February 12, 2007 or February 13, 2007.

The Court must construe the facts in the light most favorable to the non-moving party. Because the weather reports do not indicate what time snowfall abated, several witnesses could not

---

[19] Plaintiff objects to the inclusion of the National Weather Service Weather Forecast Office Kansas City / Pleasant Hill, Mo. report (Doc. 78, Ex. A) and the Weather Underground History for Kansas City International, Mo. (Doc. 78, Ex. B) as hearsay. The Court need not now decide the admissibility of the weather reports because the reports do not conclusively indicate what time the storm abated on February 12, 2007 or February 13, 2007. As such, the reports do not establish as a matter of law that a winter storm was ongoing at the time of Plaintiff's fall.

[20] Rabbito stated that he was unsure of how many hours prior to Defendant's fall the snowfall ended. Plaintiff's Response (Doc. 82). Plaintiff's additional facts set forth in her response are deemed admitted for purposes of this motion because Defendant did not file a reply brief. Pursuant to D. Kan. Rule 56.1, all material facts shall be deemed admitted unless specifically controverted by a statement of the opposing party.

recall what time the storm ended, and Plaintiff testified that she fell when it was not snowing, a genuine issue of material fact remains as to whether the winter storm was ongoing. As such, there is a question as to whether the winter storm doctrine is applicable and whether Defendant breached its duty of care.

**IT IS ACCORDINGLY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 77) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 3rd day of June, 2011.

*[signature: Eric F. Melgren]*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE